# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ADVANTAGE ADVERTISING, L.L.C, | } | |
| | } | |
| Plaintiff, | } | |
| | } | **Case No.:  CV 02-P-2017-S** |
| v. | } | |
| | } | |
| CITY OF PELHAM, ALABAMA, | } | **ENTERED** |
| | } | SEP 1 0 2004 |
| Defendant. | } | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. # 24) and Plaintiff's Motion for Partial Summary Judgment (Doc. # 31). The motions are fully briefed and were under submission, without oral argument, as of September 7, 2004.  (Doc. # 55).[1]

Plaintiff's complaint challenges, on First and Fourteenth Amendments grounds by way of 42 U.S.C. § 1983, the constitutionality of the City of Pelham's scheme for regulating signs. (Doc. # 1).  For the reasons outlined below,  Defendant's Motion for Summary Judgment is due to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law.  Plaintiff's Motion for Partial Summary Judgment is due to be denied.

The court notes that this case is strikingly similar to at least two other cases filed by ADvantage Advertising, LLC and pending in the Northern District of Alabama.  *See ADvantage Advertising, LLC v. City of Hoover*, CV-02-P-1998-S (N.D. Ala. 2002); *ADvantage Advertising,*

---

[1] The court also has before it Defendant's Motion to Strike Plaintiff's Motion for Partial Summary Judgment (Doc. # 36) and Defendant's Motion to Strike Declaration of Dennis DuPont. (Doc. # 41).  Defendant's motion to strike Plaintiff's motion for partial summary judgment is due to be denied.  Defendant's motion to strike DuPont's declaration is due to be denied in part, and granted in part, as outlined in footnote 11 *infra*.

*58*

*LLC v. City of Alabaster*, CV-02-CO-2117-S (N.D. Ala. 2002).[2]   The court refers to the analysis in the memorandum opinions on summary judgment in those cases as instructive on the issues discussed herein.

## I.     Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is an integral part of the Federal Rules of Civil Procedure and is the prescribed manner by which claims which do not involve genuine issues of material fact should be resolved.   Fed. R. Civ. P. 56.   The fact that the parties do not agree on every fact is not significant.   The law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251.   Whether a fact is material is determined by the substantive law applicable to a particular case.   *See Anderson*, 477 U.S. at 248.   Although the nonmovant is entitled to justifiable inferences from the undisputed facts, he cannot rest upon his pleadings.   Rule 56(e) provides,

> When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.   If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

---

[2] In fact, the briefs and arguments advanced by Plaintiff in this case are, for the most part, the same as those in *ADvantage Advertising, LLC v. City of Hoover*, also pending before the undersigned.

## II.    Relevant Undisputed Facts[3]

The City of Pelham (the "City") has established a comprehensive scheme for regulating the permitting, placement, number, construction, size, height, design, operation, and maintenance of signs within the City.  (Doc. # 26, Ex. 3) (hereinafter the "Sign Ordinance"). Permits must be obtained from the City prior to posting all signs with the exception of temporary "on-premise signs advertising the sale or lease of a single family residential dwelling" and those specifically exempted by Sections 4(a)-(e) of the Sign Ordinance.  (Sign Ordinance, at §§ 3(c), 4, 7).

Plaintiff ADvantage Advertising LLC ("ADvantage"), a limited liability corporation organized under the laws of the State of Georgia, is in the business of developing and leasing outdoor advertising signs for a profit.  (DuPont Depo. p. 10-11, 42). ADvantage buys or leases land upon which to erect signs to be used for the dissemination of both commercial and noncommercial speech. (DuPont Dec. ¶¶ 4, 16). ADvantage is co-owned by Dennis DuPont and Donald Danysh.  (DuPont Depo. p. 10).

ADvantage entered into lease agreements with owners of ten parcels of real property in the City which authorized ADvantage to operate signs or billboards.  (DuPont Dec. ¶ 7).  All of these locations are along major roads, such as Interstate 65, and are considered commercial areas.  (DuPont Dec. ¶ 7).  At the time the summary judgment papers were submitted to the court, ADvantage had not leased any advertising space to advertisers for those billboards. (DuPont Depo., pp. 44-45).

On June 26, 2002, ADvantage submitted ten sign permit applications requesting permission to "erect outdoor advertising (billboard) sign[s]." (Doc. # 26, Ex. 2).  The proposed

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

billboards were two-sided and would display off-premise advertising.  (DuPont Depo. p. 84; Doc. # 26, Ex. 2).  The City denied all of the applications, within two days of their submission, based expressly upon § 5(d) of the Sign Ordinance, which prohibits signs communicating "off-premise" messages except where specifically permitted by the Ordinance in § 6.  (Sign Ordinance, at § 5(d)).  The City defines an off-premise sign as one which "advertis[es] a business, person, activity, goods, products, or services not located on the premises where the sign is located." (Sign Ordinance, at § 2).  An "on-premise sign . . . identif[ies] or advertis[es] the business, person, institution, activity, goods, products or services located or offered for sale on the premises where the sign is located." (Sign Ordinance, at § 2).

Section 6 of the Sign Ordinance lists exceptions to the general prohibition on "off-premise" signs and sets forth regulations for those excepted. (Sign Ordinance, at § 6).  It provides as follows:

(a)  Off-premise advertising signs shall only be permitted in locations where the message is intended to be viewed from the main traveled way of Interstate Highway 65.  The main traveled way shall be defined as the through traffic lanes exclusive of frontage roads, auxilary lanes, and ramps.

(b)  Off-premise advertising signs may not be stacked or erected side by side on the same support structure.

(c)  No face of a "V" type off-premise advertising sign may protrude from the opposite face at any interior angle greater than 25 degrees.

(d)  Off-premise advertising signs may not be animated.

(e)  The copy area of an off-premise advertising sign may not exceed 672 square feet, excluding cut-out extensions.  Cut-out extensions may not exceed 100 square feet in area.

(f)  Maximum height of off-premise advertising signs shall be 40 feet above the centerline elevation of Interstate Highway 65; provided however, that the total height of the sign shall not exceed 65 feet.

(g)     An off-premise advertising sign may not be located closer than 2,000 feet to any other off-premise advertising sign.

(h)     Off-premise advertising signs may not be located closer than 1,000 feet to property zoned for residential use, churches, schools, and other buildings used for public assembly.

(Sign Ordinance, at § 6 (a)-(h)).

The Sign Ordinance specifies no time frame in which the City must process permit applications, but it sets forth an appeals process by which sign applicants may appeal the denial of an application. (Sign Ordinance, at § 16).

The intent of the City's Sign Ordinance is set forth in Section 1 of the Ordinance as follows:

> It is the intent of this ordinance to provide for adequate business identification, advertising and communication; while protecting the safety and welfare of the public by minimizing the hazards to pedestrian and vehicular traffic, preservation of property values by preventing unsightly and chaotic development which has a blighting influence upon the community, and by prohibiting signs of such excessive size and number that they obscure one another to the detriment of the economic and social well-being of the City of Pelham.

(Sign Ordinance, at § 1).  Section 18 also includes a Severability clause, stating, "If any part, section, or subdivision of this Ordinance shall be held unconstitutional or invalid for any reason, such holding shall not be construed to invalidate or impair the remainder of this Ordinance, which shall continue in full force and effect notwithstanding such holding." (Sign Ordinance, at § 18).

ADvantage filed suit in this court alleging violations of 42 U.S.C. § 1983.  ADvantage alleges that the ordinance violates the First and Fourteenth Amendments in several ways: (1) it is a prior restraint on speech because it requires citizens to seek approval prior to posting signs; (2) the permitting and appeals processes do not guarantee prompt determination; (3) it vests unbridled discretion in city officials by failing to place time limits on city officials' deliberations

5

and by allowing officials discretion in granting or denying permits; (4) several sections of the ordinance unduly burden and restrict speech; (5) it permits officials to regulate commercial and noncommercial speech without a purpose; (6) it restricts more speech than justified by legitimate governmental objectives; (7) it favors commercial over noncommercial speech; (8) it regulates noncommercial signs based upon the content; and (9) it favors the commercial speech of certain businesses or organizations. (Doc. # 1, Counts 1-10). Plaintiff requests that the court declare all or part of the ordinance unconstitutional, order the Defendant to permit the signs applied for by Plaintiff, and compensate Plaintiff for its losses. (Doc. # 1, Counts 11-12).

## III.    Standing[4]

Plaintiff seeks to challenge each and every unconstitutional aspect of the Sign Ordinance in this case under the overbreadth doctrine. (Docs. # 1, 34, 31). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" *FW/PBS v. Dallas*, 493 U.S. 215, 231 (1990). As a threshold matter, then, this Court must determine whether ADvantage has standing to facially challenge the entire Sign Ordinance.[5]

---

[4] In addition to questions about Plaintiff's standing to challenge the ordinance in this case, Defendant argues that the Plaintiff's claims are now moot because the City's passed a new sign ordinance on July 21, 2003, which alters or amends many of the allegedly unconstitutional sections. The court believes that *Crown Media, LLC v. Gwinnett County*, 2004 WL 1795142 (11th Cir. Aug. 12, 2004) (holding that company's challenge to constitutionality of county's original sign ordinance was not rendered moot by enactment of new sign ordinance) is dispositive on this issue. The court will assume, without deciding, that this case is not moot.

[5] The court notes that, on September 19, 2002, Defendant moved to dismiss this case based upon, among other things, its argument that Plaintiff lacked standing. (Doc. # 4). Magistrate Judge Michael T. Putnam denied Defendant's motion on January 13, 2003. (Doc. # 18). Judge Putnam did so without the benefit of the Eleventh Circuit's later decision in *Granite State Outdoor Advertising, Inc. v. City of Clearwater*, 351 F.3d 1112 (11th Cir. 2003), which is discussed more fully *infra*. Defendant did not raise the standing issue again during initial briefing on the summary judgment motions, which was completed in August 2003. (Doc. # 44). On September 7, 2004, however, Defendant filed a "Notice of Subsequent Authority" raising standing and citing to the

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)(internal quotations omitted). Standing is a threshold inquiry, requiring the satisfaction of

---

Eleventh Circuit's *Clearwater* decision. (This court had already identified the Eleventh Circuit's *Clearwater* decision and determined that it applied to this case.)  The court notes that both parties' initial summary judgment briefs rely in part on the *Clearwater* district court opinion, which was ultimately reversed on the standing issue. The district court held – as Plaintiff argues in this case – that the Plaintiff had standing to challenge "virtually every aspect of the city's sign regulations." (Doc. # 44, at 2).  After briefing was complete in this case, the Eleventh Circuit reversed, finding that standing was limited to the specific provision of the sign ordinance under which the plaintiff's permits were denied. *Clearwater*, 351 F.3d at 1115-17.

Plaintiff's arguments on summary judgment are based wholly on the assertion that it may challenge each and every provision of the City's Sign Ordinance.  The Eleventh Circuit's opinion in *Clearwater* makes clear that Plaintiff cannot.  Despite the Eleventh Circuit's reversal on this crucial point, Plaintiff never supplemented its briefs to notify the court of this subsequent controlling precedent. Plaintiff certainly did not lack opportunity to supplement the record before the court.  In fact, after summary judgment briefing was complete, Plaintiff submitted "notices of subsequent authority" to the court on eight different occasions – **at least seven** of which were submitted after the Eleventh Circuit's reversal in *Clearwater*.  (Docs. # 48, 49, 50, 51, 52, 53, 54).  None of these subsequent notices mention the Eleventh Circuit's *Clearwater* opinion.  These omissions are even more stunning given that E. Adam Webb, counsel for Plaintiff in this case, was also lead counsel for the Plaintiff in *Clearwater* in both the district court and appellate court and undoubtedly knew of the Eleventh Circuit's reversal of the district court before its opinion was even published.

That Plaintiff's counsel did not notify this court of the Eleventh Circuit's definitive opinion on a controlling issue in this case is not only astonishing, but may be in violation of his professional responsibilities.  Alabama Rule of Professional Conduct 3.3(a)(3) provides, "A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."  The commentary to the ABA Model Rules, after which Alabama's rule was patterned, explains, "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."  *See also* G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 352 (1985) ("The duty to reveal adverse precedent is well established").  Suffice it to say that this matter will be dealt with by separate order.

Finally, the court notes that, although Defendant relied on the *Clearwater* district court opinion in its summary judgment briefs, none of the points argued by Defendant were reversed by the Eleventh Circuit.  Frankly, the court is somewhat surprised that Defendant waited until September 2004 to notify the court of the November 2003 *Clearwater* decision, which is clearly in its favor.  However, the court notes that Defendant – unlike Plaintiff – did not have an ethical duty to so notify the court of such legal authority, nor did it notify the court of every subsequent opinion that might be relevant to the issues in this case. Moreover, Defendant's attorneys were not counsel of record in *Clearwater*.  Plaintiff's counsel was. ADvantage's attorney had an obligation to inform this court of controlling authority contrary to its assertion that it may challenge each and every provision of the City's Sign Ordinance.

both constitutional and prudential requirements before a federal court may adjudicate a case. Article III, § 2 of the United States Constitution requires that a "case" or "controversy" exist. U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). The Supreme Court has defined the constitutional requirement in three parts, all of which must be satisfied: (1) an injury-in-fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). With respect to the prudential considerations of standing, the Court has also identified specific requirements, "such as the general prohibition on a litigant's raising a [third person's] legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751; *see also Bennett*, 520 U.S. at 162.

### A.      Overbreadth

One exception to the prudential prohibition on litigating the legal rights of a third person is the "overbreadth doctrine," which applies in First Amendment cases involving non-commercial speech. *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1115 (11th Cir. 2003). The overbreadth doctrine permits third-party standing when a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court. *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980).

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000).

8

To succeed with a facial challenge, the challenger typically must establish that no set of circumstances exists under which the legislation would be valid. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001). Although the overbreadth doctrine provides an exception to this rule in the limited context of the First Amendment, it has generally been applied only to prior restraints on speech. *Id.* at 1331; *see Frandsen*, 212 F.3d at 1235-37 (discussing application of overbreadth doctrine).

Plaintiff, relying heavily on cases from other circuits, invokes the overbreadth doctrine and argues that it has standing to challenge the Sign Ordinance because it has a "commercial interest" in the regulations, regardless of whether ADvantage was injured by the abridgement of its own speech. (Doc. # 34, at 1-2). Plaintiff's argument is contrary to clear Eleventh Circuit law on this issue. The overbreadth doctrine does not allow Plaintiff to avoid the constitutional requirement of an injury-in-fact. *Clearwater*, 351 F.3d at 1115; *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 884 (11th Cir.2000); *Virginia v. Am. Booksellers Association Inc.*, 484 U.S. 383, 392-93 (1988). An "injury-in-fact" requires Plaintiff to "show that [it] personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982)(internal quotations omitted). Although the "injury-in-fact" requirement is "not susceptible of precise definition," *Allen*, 468 U.S. at 751, the injury must be "distinct and palpable," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979), and not "abstract" or "conjectural." *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983).

### B.   Injury-in-Fact

The Supreme Court has noted that "[i]n many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior

standing cases." *Allen*, 468 U.S. at 751-52. Such is the case here. The facts of this case – at least as they relate to the standing issue – are remarkably similar to those in *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112 (11th Cir. 2003).

Just as Plaintiff in this case, Granite State is a Georgia corporation in the business of buying or leasing land upon which to construct signs and billboards to be used for both commercial and non-commercial purposes. *Clearwater*, 351 F.3d at 1114-15. The City of Clearwater – like Pelham in this case – denied each of Granite State's permit applications under a specific provision of Clearwater's city sign ordinance. *Clearwater*, 351 F.3d at 1114-15.[6] Neither ADvantage nor Granite State appealed the denial of its permits. *Compare* (Doc. # 34, at 13 n.8) *with Clearwater*, 351 F.3d at 1114. Rather, both companies filed suit in federal court challenging the constitutionality of the city ordinance on First Amendment grounds and requesting injunctive relief. *Clearwater*, 351 F.3d at 1115.

### 1.    The Entire Sign Ordinance

As Defendant points out, ADvantage takes little issue with the off-premise advertising sections which formed the basis of the denial of ADvantage's permit applications. (Doc. 24, at 6). Rather, ADvantage – like Granite State – has challenged the constitutionality of various provisions of the Sign Ordinance regulating both commercial and non-commercial signs and dictating when permits are required before certain signs may be erected, including those provisions under which its applications were denied *and numerous other provisions which were not applied to ADvantage personally*. *Compare Clearwater*, 351 F.3d at 1115 (challenging the entire ordinance even though Granite State's permits were denied under subparts (c) and (e) of §

---

[6] Granite State's permit applications were denied because Granite State applied to construct billboards more than four times the allowable height and ten times the allowable area under Clearwater regulations. *Clearwater*, 351 F.3d at 1115.

3-1806.B.1 of the sign ordinance which dictates the allowable area and height, respectively, of a freestanding sign) *with* Plaintiff's Motion for Partial Summary Judgment (Doc. # 31) (challenging the entire ordinance even though ADvantage's permits were denied under § 5(d) of the Sign Ordinance, which prohibits signs communicating "off-premise" messages except where specifically permitted by the Ordinance in § 6). Moreover, both companies challenge the portion of the respective city ordinances setting forth the permitting process and detailing the appeals process to contest denial of a permit. *Compare Clearwater*, 351 F.3d at 1115 (challenging Article 4 of Clearwater's Community Development Code) *with* Plaintiff's Motion for Partial Summary Judgment (Doc. # 31) (challenging Sign Ordinance, at § 16) *and* Plaintiff's Response in Opposition (Doc. # 34) (same). While ADvantage seeks to assert a facial challenge to the entire Sign Ordinance, the only actual injury it claims to have suffered is the denial of its requests for permits to erect billboards based on §§ 5(d) and 6 of the Sign Ordinance, as defined by § 2.

Although the district court in *Clearwater* initially found that the company had standing to challenge the *entire* sign ordinance on First Amendment grounds, both as applied and under the overbreadth doctrine, the Eleventh Circuit *reversed*. The Eleventh Circuit found that the only harm that Granite State personally suffered was under § 3-1806.B.1 of the Clearwater Community Development Code because it was the only provision of the ordinance under which Granite State's permits were denied and the only provision giving rise to an alleged injury-in-fact. *Clearwater*, 351 F.3d at 1115-17.[7] Under the authority of *Clearwater*, this court finds that ADvantage has standing in this case to challenge *only* the constitutionality of §§ 5(d) and 6 of

---

[7] The Court did not reach the overbreadth doctrine with respect to any provision other than § 3-1806.B.1, because it determined that Granite State lacked standing to challenge any other provisions of the City's sign ordinance that did not give rise to an injury-in-fact. *Clearwater*, 351 F.3d at 1115-17.

the Sign Ordinance (as defined by § 2) because those were the only provisions of the ordinance under which ADvantage's permits were denied.[8]   Accordingly, the court's analysis from this point forward is limited to these provisions unless expressly stated otherwise.

### 2.      Permitting and Appeals

Moreover, this court finds, like the Eleventh Circuit in *Clearwater*, that Plaintiff does not have standing to challenge the portion of the ordinance addressing the City's permitting and appeals process. *Clearwater*, 351 F.3d at 1117-18.  Like Granite State, ADvantage has admitted that it did not avail itself of the allegedly unconstitutional appeals process.  (Doc. # 34, at 13 n.8).  Although ADvantage did not need to complete the appeals process in order to bring a claim under § 1983, *Tallahassee Memorial Reg. Med. Ctr. v. Cook*, 109 F.3d 693, 702 (11th Cir. 1997) (finding it "well established that a claim under 42 U.S.C. § 1983 cannot be barred by a plaintiff's failure to exhaust state remedies"), there is no question that Plaintiff's failure to utilize the appeals process impedes its standing to litigate the issue.  Without an injury-in-fact, Plaintiff cannot challenge this portion of the Sign Ordinance.

### 3.      Time Limitations for Processing Applications and Fees

Plaintiff alleges that the Pelham permitting process does not guarantee prompt determination and that it vests unbridled discretion in city officials by failing to place time limits

---

[8] The court notes that most of Plaintiff's claims in this case concern other provisions of the Sign Ordinance and thus need not be addressed by the court, including all of the following claims inasmuch as they relate to provisions other than §§ 5(d) and 6: (1) the ordinance vests unbridled discretion in city officials by failing to place time limits on city officials' deliberations and by allowing officials discretion in granting or denying permits; (2) several sections of the ordinance unduly burden and restrict speech; (3) the ordinance permits officials to regulate commercial and noncommercial speech without a purpose; (4) the ordinance restricts more speech than justified by legitimate governmental objectives; (5) the ordinance favors commercial over noncommercial speech; (6) the ordinance regulates noncommercial signs based upon the content; and (7) the ordinance favors the commercial speech of certain businesses or organizations. (Doc. # 1, Counts 1-10).

on city officials' deliberations and by giving officials"unfettered discretion to impose fees prior to granting permission to post signs." (Docs. # 1, 34 (citing Sign Ordinance, §§ 7, 16(b))).[9] Plaintiff's arguments fail both procedurally, as discussed below, and on their merits, as discussed *infra* Section IV.C.

Plaintiff lacks standing to challenge the lack of time limitations in the Sign Ordinance. ADvantage argues – like Granite State – that the Sign Ordinance is constitutionally defective because city officials have an unlimited amount of time to decide whether to grant or deny a permit application. *Clearwater*, 351 F.3d at 1117-18. The Eleventh Circuit rejected this argument in *Clearwater*, finding that "[s]uch an argument, by itself, does not create Article III standing. Granite State has neither alleged nor shown how the City's permitting and appeals procedure has injured Granite State. To the contrary, the record shows that Granite State's permits were denied within a reasonable time: the same day they were submitted." *Clearwater*, 351 F.3d at 1118.

Here, the undisputed evidence demonstrates that the City denied Plaintiff's sign permit applications two days after they were submitted (Docs. # 26, Ex. 2; 42), which is undoubtedly a reasonable time period. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324 (2002) (upholding requirement that permits be considered in 28 days). Plaintiff has made no showing that it was harmed because the City took an unconstitutional amount of time to render a decision on its permitting applications. Because Plaintiff was not injured by the lack of time limitations for Pelham to render permitting decisions, Plaintiff lacks standing to challenge the time limitations issue. *See Clearwater*, 351 F.3d at 1118; *Granite State Outdoor Advertising, Inc. v. City of St.*

---

[9] All applicants must post a "monetary deposit, bond, or letter of credit, in an amount deemed adequate" by City officials prior to obtaining permission to post signs. (Sign Ordinance, §§ 7, 16(b)).

*Petersburg, Fla.*, 348 F.3d 1278, 1282 (11th Cir. 2003) ("We realize City officials could potentially delay the processing of certain permit applications and thereby arbitrarily suppress disfavored speech. We will not, however, address hypothetical constitutional violations in the abstract.").

Similarly, ADvantage lacks standing to challenge imposition of fees under the Sign Ordinance.  There is no evidence in this case that Plaintiff was assessed a fee for its applications. Moreover, the "fee" is not the arbitrary imposition of charges that Plaintiff represents; it is actually a "bond, deposit, or letter of credit [which] shall be refunded to the applicant upon final inspection by the Building Official confirming that the sign was constructed and erected in compliance with the provisions of this Ordinance." (Sign Ordinance, at § 16(b)).  Plaintiff has no standing to challenge this provision which was never applied to it.

### 4.    Exemptions from, and Exceptions to, the Permitting Requirements

Plaintiff claims that the City's Sign Ordinance impermissibly discriminates among certain types of speech by exempting some kinds of noncommercial signs from regulation and permitting requirements.  *E.g.,* Sign Ordinance, §§ 4(a) (exempting "signs required for the control of vehicular and pedestrian safety in the public right-of-way"); 4(c) (exempting on-premise "instructional signs"); 4(e) (exempting "government signs and flags"); 5(a) (exempting "time and temperature" signs from the City's ban on "animated signs"); 7 (exempting temporary, "on-premise signs advertising the sale or lease of a single family residential dwelling" from permit requirements).  Put another way, Plaintiff argues that those exemptions violate the equal protection clause of the Fourteenth Amendment.  (Docs. # 31, 34).  Plaintiff maintains that the "special status" given to certain groups shows an "'an impermissible favoritism for certain types of noncommercial speech'" and leaves "'open the door to abuse of discretion in determination of

14

who qualifies for the exception.'" (Doc. # 34, at 17-18 (citing *National Advertising Co. v. Town of Babylon*, 703 F.Supp. 228 (E.D.N.Y. 1989)).

Standing to challenge these various provisions of the Sign Ordinance is problematic for Plaintiff under *Clearwater*. The ordinance in *Clearwater* contained similar exemptions from permitting and special exceptions for signage, and Plaintiff unsuccessfully challenged them on First and Fourteenth Amendment grounds at the district court level. *Clearwater*, 213 F.Supp.2d at Appendix 1. The Eleventh Circuit did not consider these arguments, presumably because of its finding that the plaintiff had standing to challenge only the provision under which its permits were denied. *Clearwater*, 351 F.3d at 1115-17. For the same reasons, Plaintiff lacks standing to challenge the exemptions from permitting in this case.[10]

---

[10] Notwithstanding, this challenge also fails on the merits. Although Plaintiff's brief points to similar exemptions and exceptions that have been invalidated by other circuits (Doc. # 34, at 17-19), our Circuit has twice rejected this identical argument, upholding such exemptions as constitutional. *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1346 (11th Cir. 2004); *Messer v. City of Douglasville*, 975 F.2d 1505, 1513 (11th Cir. 1992). As the Eleventh Circuit has noted:

> A panel of this Court explicitly rejected a nearly identical challenge in *Messer v. City of Douglasville, Georgia, 975 F.2d 1505* (11th Cir.1992). Messer attacked a sign ordinance exempting five kinds of signs from permitting requirements. We explicitly distinguished between exemptions from permitting requirements and exemptions from outright prohibitions such as those in *Metromedia*: "[The] exemptions [in *Messer*] are not exemptions from a general ban of all off- premise billboards, but from permitting requirements and permits fees . . . ." Simply put, a permit requirement is wholly different from a ban, and exemptions from the former are correspondingly different from-- and far less suspect than--exemptions from the latter.

*Coral Springs*, 371 F.3d at 1346; *see also Clearwater*, 213 F.Supp.2d at 1340. Moreover, Plaintiff has not demonstrated that it is in a suspect class, nor that the Sign Ordinance in this case classifies persons or entities based upon suspect classes, nor even that the construction of billboards for a commercial purpose is a fundamental right protected by the Constitution. This claim cannot withstand summary judgment.

Accordingly, having determined that ADvantage has standing to challenge only the constitutionality of §§ 5(d) and 6 of the Sign Ordinance (as defined by § 2) as applied to it and, under the overbreadth doctrine, as applied to speech, the court turns to the analysis of the specific provisions under which ADvantage's permits were denied.

**IV.     Constitutionality of Sections 5(d) and 6 of the Sign Ordinance**

In *Metromedia Inc. v. City of San Diego*, 453 U.S. 490 (1981), the Supreme Court recognized that "[b]illboards, . . . like other media of communication, combine communicative and non-communicative aspects," and, while the government may have legitimate interests in controlling the non-communicative aspects of the medium, the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects. *Metromedia*, 453 U.S. at 502. Where a governmental regulation of the non-communicative aspects of a medium impinges in some degree on the communicative aspects of that medium, the courts must reconcile the government's regulatory interests with the individual's right to expression. *Metromedia*, 453 U.S. at 502.

> That task is easier said than done. As noted by the district court in *Clearwater*:
>
> > It is truly a Herculean task to wade through the mire of First Amendment opinions to ascertain the state of the law relating to sign regulations, beginning with the Supreme Court's leading decision on billboard regulations in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 570, (1981) (plurality decision) (Rehnquist, J., dissenting, who referred to the plurality decision as a "virtual Tower of Babel, from which no definitive principles can be clearly drawn") . . . . [T]here is much variety and diversity of opinions in this area (in addition to sign ordinances, courts have reviewed First Amendment challenges to adult entertainment clubs, tobacco advertising and the noise volume of music concerts), suggesting that constitutional law on this subject is far from clear.
>
> *Clearwater*, 213 F.Supp.2d at 1327. Such clarity is similarly elusive in this case.

Nonetheless, it is well settled that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members*

*of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984).  In this case, ADvantage relies on *Metromedia* and its progeny for the argument that Pelham's Sign Ordinance is unconstitutional as an impermissible, content-based ordinance that cannot survive strict scrutiny review.  The law is clear, however, that an ordinance need only be subject to strict scrutiny if it serves to regulate a viewpoint or amounts to censorship.  *Vincent*, 466 U.S. at 804 (refusing to apply strict scrutiny because "there is not even a hint of bias or censorship in the City's enactment or enforcement of this ordinance. There is no claim that the ordinance was designed to suppress certain ideas the City finds distasteful or that has been applied to [Plaintiff] because of the views that they express").

Regulation of speech through sign ordinances that are viewpoint-neutral is permissible, provided that the regulation is narrowly tailored to further significant government interests. *Metromedia*, 453 U.S. at 511-12, 516.  Viewpoint-neutral ordinances are subject to intermediate – not strict – scrutiny, which requires the government to demonstrate that: "1) it has the constitutional power to make the regulation, 2) an important or substantial government interest unrelated to the suppression of free speech is at stake, and 3) the ordinance is narrowly drawn to achieve its desired ends, leaving other channels for the communication of information." *Messer*, 975 F.2d at 1510; *see also Vincent,* 466 U.S. at 805.

### A.    Content-based vs. Content-neutral

Thus, the first issue before the court is whether the provisions in question seek to regulate speech according to its content or whether they are content-neutral.  This differentiation is not always easy to make.  Again, as the district court in *Clearwater* noted:

> What makes the content-based versus content-neutral distinction so difficult in cases involving sign ordinances is that, by their very nature, signs are speech and thus can only be categorized, or differentiated, by what they say. This makes it impossible to overlook a sign's "content" or message in attempting to formulate

17

> regulations on signage and make exceptions for distinctions required by law (*i.e.*, for sale signs) or for those signs that are narrowly tailored to a significant government interest of safety (*i.e.*, warning or construction signs).

*Clearwater*, 213 F.Supp.2d at 1333.

Section 5(d) disallows off-premise signs that do not fall into one of the § 6 exceptions. (Sign Ordinance, at § 5(d)). The City defines an off-premise sign as one which "advertis[es] a business, person, activity, goods, products, or services not located on the premises where the sign is located." (Sign Ordinance, at § 2). Subparts (a), (g), and (h) of Section 6 set forth location exceptions to the general ban on off-premises signs, while subparts (b)-(f) of Section 6 define regulations for size and other facets of excepted off-premise signs.

The court finds *Messer v. City of Douglasville, Ga.*, 975 F.2d 1505 (11th Cir. 1992), to be similar to the case at hand and instructive on the issue of content-neutrality in off-premise sign regulations. In *Messer*, Plaintiff argued that an ordinance favoring on-premise over off-premise signs promoted commercial speech over noncommercial speech and violated the First Amendment as interpreted by *Metromedia*, 453 U.S. at 511-12 (finding that regulation favoring on-site commercial advertising over off-site commercial advertising was permissible, but regulation favoring on-site commercial over on-site non-commercial speech was impermissible). The Eleventh Circuit rejected this argument, finding instead that an ordinance prohibiting off-premise signs is viewpoint-neutral because it regulates signs not based on the viewpoint of the speaker, but based on the location of the signs. *Messer*, 975 F.2d at 1509.

Such a finding is directly applicable to the Ordinance in this case. Just as in *Messer*, the City's ordinance limits the location of off-premise advertising signs to selected areas. The off-premises/on- premises distinction of §§ 2 and 5(d) is related solely to location, not content. Likewise, the exceptions for allowable off-premises signs found in § 6 are related solely to

18

location.  There is no dispute that the building permit applications submitted by ADvantage contained no information relating to the content of the proposed signs. (Doc. # 26, Ex. 2).  The applications merely state the proposed location of the sign, the dimensions, and the fact that the proposed signs were to be billboards.  (Doc. # 26, Ex. 2). There is no indication that City officials considered content in their decision to deny Plaintiff's permits.[11]  In fact, at the time the summary judgment papers were submitted to this court, ADvantage had not leased any of the advertising space on the billboards for which it applied.  (DuPont Depo, p. 45).

The *Messer* court also concluded that such an ordinance regulating off-premises signs does not favor commercial over non-commercial speech, and neither does it favor non-commercial over commercial speech.

> [T]here is simply no basis for equating on-premise signs with commercial speech, and off-premise signs with noncommercial speech. A noncommercial enterprise would be able to put up a sign bearing a noncommercial message as long as it relates to any activity on the premises. Similarly, a commercial enterprise would

---

[11] Plaintiff's attempt to create a disputed issue of material fact on this point is not persuasive. Plaintiff points to ADvantage co-owner DuPont's declaration as "evidence" that the sign permit applications were denied based upon the Sign Ordinance's alleged ban on "signs carrying messages such as those that the plaintiff seeks to communicate, which will generally not pertain directly to the business on the premises." (DuPont Dec., ¶ 9). First, the court notes that the above-referenced portion of DuPont's declaration contradicts his deposition testimony. DuPont testified that, at the time of his deposition, he did not know the reason for the denial of ADvantage's sign permit applications other than that they were denied pursuant to the sign ordinance. (DuPont Depo, pp. 104-105). "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir.1984). Such an affidavit would be a sham. Accordingly, Defendant's motion to strike DuPont's declaration (Doc. # 41) is due to be granted as it relates to that portion of DuPont's declaration which contradicts his deposition testimony. Moreover, the City official who denied the sign permit applications has stated that the applications were denied on the basis of location alone. (Doc. # 40, Ex. D). Therefore, there is no substantial evidence in the record to suggest that any City officials was aware of, much less sought to ban, "messages such as those that the Plaintiff seeks to communicate."

> be able to put up a sign bearing a noncommercial message which related to any
> activity on the premises. For example, an auto mechanic's garage would be able to
> put up a noncommercial message relating to the recycling of used motor oil.

*Messer*, 975 F.2d at 1509. *Accord Wheeler v. Commissioner of Highways*, 822 F.2d 586, 591

(6th Cir.1987)(finding that a distinction between onsite and offsite noncommercial signs is

constitutionally permissible); *National Advertising Co. v. Chicago*, 788 F.Supp. 994, 997-98

(N.D.Ill.1991) ("the distinction between on-site and off-site advertising is not aimed toward the

suppression of an idea or viewpoint").  Because the *Messer* court found the regulation to be

content-neutral, it applied the intermediate scrutiny test requiring a narrowly tailored restriction

furthering significant government interests. *Messer*, 975 F.2d at 1510.

Five years after *Messer*, another Eleventh Circuit panel considered the constitutionality

of an ordinance substantially similar to the one before this court today.  In *Southlake Property

Assoc. Ltd. v. City of Morrow, Ga.* 112 F.3d 1114 (11th Cir. 1997), the challenged sign

ordinance prohibited billboards, defined as "any sign which advertises a commodity, product,

service, activity or any other person, place, or thing, which is not located, found or sold on the

premises upon which such sign is located. *Morrow,* 112 F.3d at 1117.  The Sign Ordinance in

this case is virtually identical, prohibiting off-premises signs which "advertise a business,

person, activity, goods, products, or services not located on the premises where the sign is

located." (Sign Ordinance, at § 2).  The Eleventh Circuit in *Morrow* held that the "definition of

billboard as an offsite advertising sign does not include noncommercial speech as such speech is

always onsite." *Morrow,* 112 F.3d at1119.  *Morrow*'s conclusion that noncommercial speech is

inherently "onsite" is wholly consistent with – albeit more forward than – *Messer*'s finding that

"there is simply no basis for equating on-premise signs with commercial speech, and off-premise

signs with noncommercial speech." 975 F.2d at 1509.   The *Morrow* court, having determined

that, by definition, the ordinance regulated only commercial speech, applied the *Central Hudson* test for commercial speech and found the ordinance constitutional. *Morrow*, 112 F.3d at 1119; *see also Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320,1344 (11th Cir. 2004) (citing *Morrow* with approval).

The *Central Hudson* analysis utilizes a four-part test for evaluating the constitutionality of ordinances regulating commercial speech: (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 562-66 (1980).   Applying the law of *Morrow* to this case, the regulation which restricts only offsite signs could not, by definition, restrict noncommercial speech and thus would be subject to the *Central Hudson* test.

Whether the court applies the "viewpoint-neutral" test or the *Central Hudson* test is of no moment, however. Because the court finds, as discussed in Section IV. B-C *infra*, that the ordinance in this case fulfills the "viewpoint-neutral" requirement of a "significant" government interest, there can be no doubt that it would satisfy the *Central Hudson* standard of "substantial" interest, which is similar to the viewpoint-neutral standard, if not the same. *See, e.g., Capobianco v. Summers,* 377 F.3d 559 (6th Cir. 2004) ("[W]e see no basis for concluding that [] "significant governmental interest" and *Central Hudson*'s "substantial" government interest are materially different.").

21

Accordingly, consistent with *Messer* and *Morrow*, the court finds that §§ 5(d) and 6 of the Sign Ordinance (as defined by § 2) are content-neutral in their regulation of off-premise billboards and signs.

**B.      Narrowly Tailored to Serve Substantial Government Interests**

Because the ordinance is viewpoint-neutral, the court must now decide if substantial government interests justify this restriction, and if so, whether the restriction is narrowly tailored.   Time, place and manner restrictions are permissible if "they are justified without reference to the content of the regulated speech, ... serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976).

Section 1 of the Ordinance states the following regarding the interpretation and general purpose for the Sign Ordinance's creation in this case:

> It is the intent of this ordinance to provide for adequate business identification, advertising and communication; while protecting the safety and welfare of the public by minimizing the hazards to pedestrian and vehicular traffic, preservation of property values by preventing unsightly and chaotic development which has a blighting influence upon the community, and by prohibiting signs of such excessive size and number that they obscure one another to the detriment of the economic and social well-being of the City of Pelham.

(Sign Ordinance, at § 1).   Courts have consistently held that similar government interests are sufficiently "substantial" to pass constitutional muster. *See Metromedia*, 453 U.S. at 511-12 (finding that traffic safety and appearance of the city were substantial government goals, and ordinance, which did not prohibit all billboards but allowed onsite advertising and some other specifically exempt signs, was not broader than necessary);   *Vincent*, 466 U.S. at 804 (holding that a city's aesthetic interests are sufficiently substantial to provide an acceptable justification for a content-neutral prohibition against the use of billboards); *Messer*, 975 F.2d at 1510 ("[It is]

well settled that both traffic safety and aesthetics are substantial governmental goals.");
*Morrow,* 112 F.3d at1116 (recognizing rights of public to "clean, aesthetically pleasing and safe
business thoroughfares"); *Harnish v. Manatee County, Fla.* 783 F.2d 1535 (11th Cir. 1986)
(finding that "prohibition of portable signs to eliminate aesthetic blight passed muster under the
First Amendment").   Moreover, this ordinance is sufficiently narrowly drawn, leaving open
ample channels of communication of noncommercial messages, including any onsite
communications. *See, e.g., Metromedia*, 453 U.S. at 511-12. Accordingly, the court finds that §§
5(d) and 6 (as defined by § 2) are viewpoint-neutral regulations that pass constitutional muster
because they are sufficiently narrowly tailored to serve substantial government interests.

### C.     Prior Restraint / Discretion of the City Officials

Plaintiff generally alleges that the ordinance at issue in this case, requiring a permit
before a sign can be erected, constitutes a unconstitutional prior restraint on speech because it
lacks required procedural safeguards such as time limitations and limited discretion of city
officials in granting or denying permits. (Doc. # 1). As discussed in Section III.B.3, *supra*,
Plaintiff lacks standing to challenge the lack of time limitations governing deliberations of city
officials.   In any event, Plaintiff's prior restraint "procedural safeguard" arguments also fail on
their merits.

The extent to which procedural safeguards – such as time limits – are required is
governed by whether the regulation in question is a content-based prior restraint on speech or
content-neutral.   Two cases are instructive on this issue.   First, in *Freedman v. Maryland*, 380
U.S. 51 (1965), the Supreme Court considered a system of prior restraint for motion pictures that
required every film be submitted to a Board of Censors and subject to rejection and censorship if
the Board considered the film "obscene"or "tending, in the judgment of the Board, to debase or

corrupt morals or incite to crimes." *Freedman*, 380 U.S. at 52, n. 2. The Court recognized that such a content-based censorship system must contain the following procedural safeguards in order to avoid constituting an invalid prior restraint: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990) (citing *Freedman*, 380 U.S. at 58-60).

The Supreme Court again considered the applicability of the *Freedman* safeguards in *Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002). In *Thomas*, the Court considered a regulation requiring a permit to hold a public event in a park. *Thomas*, 534 U.S. at 320-23. The Court clarified that the content-neutral permitting scheme in *Thomas* was quite different from the "core abuse" censorship at issue in *Freedman*. *Id.* at 320-23. Accordingly, the Court held that the "extraordinary procedural safeguards" required in *Freedman* were inapplicable. *Id.* at 323-24. Importantly, "the Court never stated time limits were per se required for a permitting scheme to be valid." *St. Petersburg*, 348 F.3d at 1282. Instead, the Court held that a regulation must incorporate "adequate standards to guide the official's decision and render it subject to judicial review." *Thomas*, 534 U.S. at 323-24.

Plaintiff alleges that the provisions at issue in this case are unconstitutional and akin to a *Freedman* prior restraint on speech. (Doc. # 1). Plaintiff's argument is flawed from its inception. In fact, the provisions at issue in this case are not at all similar to the content-based censorship system in *Freedman*. Rather, §§ 5(d) and 6, as discussed in Section IV.A *supra*, are content-neutral, nondiscretionary provisions that, pursuant to *Thomas*, are not subject to the *Freedman* requirements. *See also Staub v. Baxley*, 355 U.S. 313, 322 (1958); *Horton v. City of*

*St. Augustine*, 272 F.3d 1318, 1332 (11th Cir. 2001). Accordingly, any lack of time limitations for rendering decisions on permitting applications in §§ 5(d) and 6 is not constitutionally fatal. So long as §§ 5(d) and 6 contain "adequate standards to guide the official's decision and render it subject to judicial review," they pass muster. *Thomas*, 534 U.S. at 323-24.

They do. Sections 5(d) and 6 afford no undue discretion to the permitting authority. *See Clearwater*, 351 F.3d at 1117. Section 5(d), as defined by § 2, contains a nondiscretionary test for determining whether a permit should be granted or denied – does the sign "advertise a business, person, activity, goods, products, or services not located on the premises where the sign is located?" (Sign Ordinance, at §§ 2, 5(d)). There is no room for discretion when the only issue to be considered under these provisions is the location of the sign. As noted by the Eleventh Circuit with respect to a similar, content-neutral regulation, "City officials may not exercise unlimited discretion. They can only process permit applications based upon objective criteria set forth in the ordinance. No official is able to reject an application simply because of the proposed content. Moreover, anyone adversely affected by the ordinance may resort to either administrative review or [] the courts." *St. Petersburg*, 348 F.3d at 1282. Accordingly, the court finds that § 5(d), as defined by § 2, contains "adequate standards to guide the official's decision and render it subject to judicial review" as required by *Thomas*. Because the only provisions that Plaintiff has standing to challenge are content-neutral and pass constitutional muster under either *Central Hudson* or the "viewpoint-neutral" test, Defendant's motion for summary judgment is due to be granted.

## V.      Conclusion

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial and that

Defendant is entitled to judgment as a matter of law.  Plaintiff's motion for partial summary judgment is due to be denied. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ___(0ᵗʰ___ day of September, 2004.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE